Good afternoon, Illinois Appellate Court, First District Court is now in session, First Division. The Honorable Justice Carl Anthony Walker presiding, case number 1-8-0-8-8-5, People v. Anthony Jones. Hey, good afternoon, lawyers. Good afternoon, everyone else. I'm Justice Walker, and I have here with me today Justice Pierce and Justice Coghlan, and I'd like to start by asking the lawyers to introduce yourselves. Good afternoon, your honors. I'm Stephanie Puente from the Office of the State Appellate Defender on behalf of Anthony Jones. Good afternoon. I am Brenda Gibbs, Assistant State's Attorney on behalf of the people of the state of Illinois. Okay, and to each of you, how much time do you need? We'll start with you, Ms. Puente. Yes, I'd like us to reserve 16 minutes for argument and four minutes for rebuttal. Okay, and Ms. Gibbs? 15 minutes, your honor. 15 minutes, okay. And if we are asking questions, and we prevent you from making an important point that you believe you would like to make, and you run out of time, just let us know, and we'll give you more time to make that point to us. So we'll be flexible. And with that, let's get started. Ms. Puente. Sure. Good afternoon, your honors. May it please the court, counsel. Today I'll be addressing issue one and touching upon issue two of time permits. The issue before this court is whether the trial judge complied with Krankel and Jolly on remand. Anthony Jones's case was remanded because the state committed reversible error at the preliminary Krankel inquiry. Because the judge had dismissed Jones's claims based in part on the state's input, a different judge should have conducted the inquiry on remand. However- The issue is whether or not the judge complied with this court's ruling in the remand. This court did not order a different judge. So what was the non-compliance there? Well, even if this court didn't specifically say that the inquiry on remand should be conducted by a different judge, that is the appropriate remedy that our Illinois Supreme Court dictates in Jolly. I mean, Jolly specifically, the Illinois Supreme Court in Jolly specifically considered this alternative argument. And the initial unmodified opinion, the Illinois Supreme Court only talked about remanding for no adversarial participation with the state. The defendant in Jolly filed a PRH asking the Supreme Court to consider its alternative argument, which was that because of the state input, the judge couldn't properly consider the claims on remand. And that's most likely because at a preliminary inquiry, there's no safeguard- That was the argument, but what did the Supreme Court rule as to that argument? They expressly adopted Jolly's argument as- But did they rule that it had to go to another judge? Yes. It's on paragraph 42 of the modified opinion. Wait, excuse me. You're not suggesting that there is a bright line rule based on Jolly that under any circumstances similar to this, that you get a new judge? Only when the state's participation is reversible error. No, I don't think that's what they held. Well, it would be in a case because this error is similar to Jolly. It's not exactly the state's participation is similar to what happened actually more in Fields than in Jolly. Because the state essentially vouched for what trial counsel did and said that, yeah, he investigated these surveillance videos and then took a position against the defendant's arguments. Also, I would ask this court to consider this court's decision in People v. Robinson, which was issued after Jolly. And the state's adversarial participation is similar to what happened here. And the remedy was for a remand before a different judge. What about People v. Jackson? People v. Jackson is distinguishable from this case. In Jackson, it was a different procedural posture. In Jackson, the Illinois Supreme Court wanted to determine if the state had committed reversible error. And they found that it didn't. This case is also factually distinguishable from Jackson because the state's input at the preliminary inquiry in Jackson occurred after the trial court had already considered arguments made both by the defendant in Jackson and trial counsel. Here, the state interrupted, not interrupted, but interjected his opinions while the court was still considering the defendant's and Mr. Jones and trial counsel's arguments. And also, it's further distinguishable because Jackson- You're absolutely correct that the state had no business interjecting any opinion into this proceeding. But essentially, weren't they just saying the same things that the defense counsel had just argued to the judge? The distinction is that they clearly advocated against- I'm not saying that they were justified. They clearly were not. But aren't these fact patterns that you're talking about in these other cases a lot more egregious? I would agree that Jolly is the most egregious error that occurred. It's an example of the most egregious. I would say this more fits between the case- probably the error in Robinson, which was after- it was a First Division case. And that one, the state was able to rebut the defendant's arguments during the hearing. So, because this court has shown that the facts are not limited to Jolly, we would argue that this is a dissimilar posture and a different judge should have conducted the inquiry on Reitman. And I know, Your Honors, I understand the reticence of trying- Justice Walker just pointed out, we didn't order that that happen. So, how does the trial judge have the ability to do something that we don't order? Well, it's the dictates of the Illinois Supreme Court based on Jolly and the application of Jolly, but other cases that are similar error. We're not complaining that the appellate court erred in its mandate. Any reasonable trial judge knows what Jolly and FEAL stand for, which was when there's a more than de minimis participation of the state and it's reversible error, it goes to a different judge. I think you're going to hear differently in about a minute or so. Okay. Well, in Jolly, decided in 2014, paragraph 42 or 43 starts by saying, now we have to fashion a remedy in this case. And they go on to hold that the remedy in this case is to remand to a different judge. Now, you argue that the trial court presumably knows the law. I would add to that that the appellate presumably knows the law. So, when Justice Neville rendered his opinion, joined by Justice Puchitski and Mason, the three of them decided that a remand back to Judge Wilson was the appropriate remedy in this case. So, why is it that it's error for Judge Wilson to proceed according to the directive of the appellate court who has knowledge of the Jolly decision to go ahead and conduct a crankle hearing? It seems to me that this now falls into the typical motion for substitution of judge after ruling substantive rulings have been made. And now you have to decide whether the judge was prejudiced or should have recused himself or whatever. But on its face, I don't see anything that mandates from the Supreme Court that every time you have a reversal on a crankle issue because the state participated in the inquiry, if the Supreme Court wanted that mandate to say, when that happens, it has to go to a different judge, I think they would have said that. Well, I understand your position, Your Honor. The thing is that it hasn't, the application of Jolly hasn't been limited just to Jolly. Again, we asked the court to consider Robinson, which it was remanded to a different judge. But all those cases seem to me to be fact dependent on what happened in the case and that the reviewing court based upon Jolly decides whether it's egregious enough that a new judge would be the better way to go. In this case, Justice DeVille and his panel reviewed everything and decided to send it back to Judge Wilson. They could have very easily said to another judge, they've done it before. So it seems to me that if the appellate court exercises its authority to remand without going to a different judge, it certainly doesn't put any onus on the trial court judge to do it on his own. Now, and that's why we also argued ineffective assistance of appellate counsel for not specifying that this error was like the Jolly and its prodigy, especially Robinson. I mean, I think what we need... Why couldn't that be a tactic also that it wasn't that bad? Well, I mean, if it was found a reversible error, I mean, that, you know, if now that we have Jackson, we know that if it wasn't that bad, maybe it wouldn't have gone back. I mean, I think the concerns is and why we say Jolly still applies in this case, and we're not faulting the appellate court. The appellate court, by citing Jolly and Fields, they knew what they were doing. The fact is that trial courts don't always get it, right? That's why we're here, because the trial court screwed up the first time doing the Krinkle inquiry. But the concerns in Jolly are here. I mean, Illinois Supreme Court specifically addressed the concern of if you remand back to preliminary inquiry without the assistance of defendant to present new claims to kind of remove the taint created by the state's adversarial participation at the initial inquiry. I mean, here, this case is exemplary of that. Mr. Jackson... The problem is that the appellate court addressed that issue initially in the first appeal, and the appellate court chose to send it back to the trial judge. The trial judge followed the mandate. The trial judge did not screw up, as the term you used, screw up. The trial court did not screw up when the case went back. So you're not arguing that the trial court did anything wrong now. So maybe in that case, you should move on to your second argument. And your second argument, I believe, is that there was ineffective assistance of appellate counsel in the first appeal. Right. We argued that in your brief. So go ahead. Why don't you move on to that? We also argue that appellate counsel on the initial appeal was ineffective for failing to recognize the appropriate remedy under Jolley, Fields, and Robinson, which was if the court is to find more than diminished misparticipation by the state and find that it's reversible error, that they should have also asked for the remand to go before a different judge. And again, it's just the concerns that the judge, I mean, the defendant by himself, won't be able to present new claims or new information to assist the trial counsel, the trial judge to determine whether he's made a showing of possible neglect of counsel. And again, Jolley doesn't require a finding of bias. That's not what we're saying. And we're not saying that that's what appellate counsel should have argued. But it's more that appellate counsel should have just specified and clarified and addressed the procedural posture in Jolley to say, you know, because he's not getting counsel, let's make sure that if this error is reversible, it should go before a different judge. Well, if that argument had been made on direct appeal, and it was rejected, where would you be? Be right back to where you started from, right? A remand in front of Judge Wilson. Correct. I mean, that would be a possibility, but at least it would be your position then be that Judge Wilson then had to take the extra step under Jolley on his own and recuse himself and get a new judge? I would say if the appellate court considered the arguments and rejected it. Yes. I would say yes. I mean, because the Illinois Supreme Court dictates that this is what the proper remedy is. I mean, Jackson hasn't changed that. And until, you know, until the Supreme Court addresses that, this is what the proper remedy is. I know, you know, and, and since they've, you know, it's their directives, we kind of have to follow what they do. And if the Supreme Court decided to treat Crankle different than other claims where a defendant has to make a showing that he needs a different judge, I like a new sentencing hearing or a new trial. You know, it's probably because there's assistance of counsel in those claims and those type of errors. And when it goes on remand, there's assistance of counsel to get rid of any, to present any information or object to any of the, of the court's behaviors to ensure that they're not any prejudgment comes in or anything like that. Your honors, if you have no more questions on that issue, I'd like to talk about the alternative argument, which was the trial court also failed to complied with, with Crankle because it didn't ascertain the factual basis of two of Mr. Jones's claims. The main, our main issue, and I think even the trial judge found problematic is this issue about these surveillance videos. At trial, Angie Lombardi, who was the clerk, her testimony was kind of, she was, you know, it's kind of shaky to as to whether there really was a camera, an outdoor camera showing the outside, which would have been the entrance, the curb and the street parking that Mr. Jones alleges would have shown him coming from the opposite of direction instead of the she was shaky. That was not my interpretation when I read her testimony. Well, the trial court asked her, you know, inquired further questions. Cause he's like, I'm confused. You said first that there was a camera that you didn't know. And then based on his questioning, she said, she acknowledged that the outdoor cameras weren't the footage of the outdoor cameras weren't visible in the surveillance video that was played at, at the, at the trial. And then we have now at the inquiry twice at the initial inquiry and the inquiry on remand, which was consistent. Wasn't she though, that even if those cameras had been working, that you couldn't see the views of where the sexual assault occurred in any event. Correct. And I think Mr. Jones isn't even really, that wouldn't really defeat Mr. Jones's claims. What his claim is more that they would show him coming from the opposite direction of, I believe it had been Western or Armitage instead of Lindale that they would show him coming with his dog. And then he entered in the bar. And cause I believe she explained, described what the view of that camera would have been, would have been the curb and also part of the entrance or, or the street going towards the bar as well as the street parking. So even if it didn't show it would have showed him, he alleges that it would have showed him coming in the opposite direction. Even if it did. So, so what? Well, his whole, I mean, impeachment on a pretty collateral matter, collateral issue. Not necessarily because I mean, Mr. the complainant talked about that. He was several acts happened. Sure. Some were further down Lindale, but others were closer to when they were getting to the, to the, to the actual establishment, the liquor store. So it's possible that could have shown that. He also talks about Mr. Jones having what was considered the non firearm weapon, which was a pipe that he was banging and used to intimidate Mr. the complainant and a dog that he used that would have, and they never, this police never found that pipe that he used as a cane. So it may be, it would have showed something that that Mr. Jones was not, it was coming different direction and wasn't armed with anything or with, or, or came in with anybody into the store. But wasn't the real significance of that evidence, what, what, that it was being offered for what happened inside the store? Yes, for him coming inside. He, Mr. Jones complains that the videos just show him at the counter. They never showed him walking behind the complainant as well. And he also said that they would have showed what he did before he entered. You're talking about a dog and the crowbar, but you're not arguing, are you that it would have shown the actual sexual assault because the evidence suggests that it wouldn't have, I mean, it might've showed me something cause it wasn't just the sexual assault. There was a sexual assault based on what was testified at trial. It wouldn't show all the way down in Lindale. It might've showed like the part of closer to where the street parking is because there is even the defendant doesn't say that. No, but he does talk about that. It wouldn't show like the acts that he did. But that's why we need, it should have been fleshed out at the preliminary crinkle inquiry. How was it not flushed out? Well, because the trial counsel test told the court that he spoke with the owner and the owner said that there was the outdoor cameras were working and that he had given all the videos that contained or that showed Mr. Jones on him on the videos to the police. And we don't know what happened if the footage from the outdoor cameras are missing or not, which could have shown a number of things. All the trial judge had to do was ask, okay. Well, the defendant doesn't know either. So asking the defendant. Nope. He would have asked the trial counsel trial counsel said, I talked to the owner. He told me that he gave all the tapes in his possession to the police. And so what, what more talking, what more inquiries would you have, would you suggest should have been done? He could have asked how many of the outside cameras are there? How many videos have you turned over? Did any of those videos contain footage? Wait, counsel. He said everything in his possession relating to this defendant was turned over to the police, right? But he didn't, we don't know. Did he investigate and clarify that he could easily clear that up? Because even this, he even talks about having a copy of the inventory sheet that shows all the videos or like the videos were collected by the detective. All he had to tell the court. Did he subpoena those videos from the police? He initially subpoenaed, but he didn't follow up once he got them through discovery. He got videos through discovery from the state and correct. So you didn't answer my question though. He did get discovered from the state, which included videos. And the question is, did he subpoena the videos from the police? He said he subpoenaed them on like before even like arraignment. Um, and he had sent an investigator out and did he actually receive a response to that subpoena? There was never a response. No, there was no follow up. Correct. Because he received. And I know that one of the issues that the defendant raised during the preliminary hearing was that the video that he saw was just the video that the state provided, which is the evidence inside the bar. And I don't think, is it, did counsel ever show anything of the outside ever produced? No. And I think the defendant's argument was that according to the conversation that there were, he believed there was videos outside. And the only person that would know that was the owner of the establishment. Correct. And the owner of the establishment was never called. And the attorney implied applied that the reason the owner of the establishment was not called is because the owner did not like the defendant. It would not be helpful to him for that reason. Is that correct? Correct. Your honor. But, but I guess if the owner were called, he would have had to tell the truth about the video if such video existed and there would have been a question, well, where's that video? Correct. Is that what the arguments are here? Okay. And so is that what you're arguing? Well, actually you're not arguing. Oh, you are. You're arguing that, well, are you arguing an effective assistance? Well, you are. So you're arguing that the trial judge, I guess your argument needs to be really that the trial judge did not conduct an effective crank or preliminary crankle inquiry. Is that your argument? Yes. Because there's just not enough to say that, you know, there's, you know, that there was established impossible neglect. That's why we didn't argue it. Based on all of that. Yeah. You're, you're saying that the trial court should have based upon the, the preliminary inquiry appointed counsel, because there was, you believe there was enough evidence presented to take us to a, an evidentiary hearing. We, we did that, but we also talked about that because there was some questions, some factual disputes that, that arose at the preliminary inquiry that trial counsel, I mean, the trial judge should have asked more questions to flesh it out. And I think it's, it's mostly agree that there's no case law anywhere that requires that, right? Yes, your honor. I mean, there's, there's nothing, but more does talk about some exchange and when there was an exchange that went on for pages and pages and pages between the court and the defendant. Correct. But if there's a factual dispute, it could have been easily addressed in a question or two. It's what happened to this, to this, this footage from the outside is, does it even exist? Is it, is it missing? And I don't think we don't believe that the record shows that the trial court flushed that out. And it was we would argue that even though there isn't any law saying you have to ask these questions when a factual dispute arises, where, when the facts are freshest in the mind of both the trial court and the attorney and the defendant ask those questions, and then we might not be here making these arguments. If the record shows, this is just a wild goose chase. We know it's not going to get anywhere. So that, that would be our position. Just, you know, it still requires some exchange and to see if there's possible neglect shown. And just briefly as to the issue about this third witness. Again, another. Take a finish up if you can't counsel, because you're actually out of time. Okay. You can go ahead and finish up though. Again, a factual issue, a factual dispute arose and trial court should have inquired a little bit more about whether Mr. Jones just misspoke or whether there was actually a third witness by the name of Angie. For the reasons above and the reasons in our briefs, Mr. Jones would ask this court to remand for another preliminary crinkle injury. Thank you. Thank you. Okay. And Ms. Gibbs. Thank you. May it please the facts that counsel talked about regarding the defendant's testimony about, or his position about the video. In the record, defendant did not say that the video would show that he came from Armitage. He maintained that any outside video might show that he was in the alley drinking with an elderly man. And he was with his dog. That was what his position was. He was not arguing that he from the opposite direction. His position was that he was in the alley with this man drinking and that the outside video would have shown that. Now, Angie's testimony established that the cameras that were outside would not show anyone walking on Lindale and would not show any of the community aspects. She maintained they would show a finite space outside the door and to where the and, uh, counsel argued that the judge was confused by her testimony. The judge began his questioning by saying, I'm confused. And at the conclusion of his questions, he, he said, he said, um, that his questions to Angie were to establish without her knowing what she would, he was asking her or to establish whether the cameras would have shown what that. So with that clarification, um, the claim that counsel was ineffective for not asking for the remand is without merit because Jolly does not announce a universal rule that remand is required whenever the state's participation is adversarial. Jolly, as justice Pierce noted, found that under the facts of Jolly, a remand was appropriate. And then they said in paragraph, I believe 46 of Jolly, they said the remedy in this case is remand to a different judge. Now, even as counsel maintains, if defendant in that case asked the court to reconsider its initial holding of a remand without a new judge and the judge did reconsider that reconsideration was based on Jolly's facts and Jolly's facts support that. Um, in Jackson, the court indicated that adversarial participation does not always amount to reversible error. And in this case, there was not a finding after argument that this case was reversible. The people conceded that they should not have opened their mouth during that hearing as they should not have. And that because they did, it should be sent back for a new hearing. So on the facts of this case, the people did not ask for a harmless error review. And that was not that determination was that that was never factually explored by the court. It was a concession that it should go back for a new hearing. It was not a concession, however, that it should go back for a new judge. And the people's position is that that was not required. There was no indication in this case that this judge was unable to be impartial. And in the second inquiry, he allowed defendant ample opportunity to explore his claims. As to defendant's position that the court should have further inquired regarding the video, defendant's argument is that defense counsel did not properly investigate. Defense counsel indicated he sent an investigator to inquire about the video. He himself spoke to the owner and asked the owner if the video was turned over. And the owner said that all the video, whether, you know, because counsel asked what there is their outdoor video, was it working? And the owner indicated that everything was turned over to the police and counsel obtained, he indicated he obtained that video through discovery. One of defendant's points in her brief was that counsel can't simply rely on discovery. Well, here he did not. He indicated that he sent an investigator. He also spoke with the owner about them. So he didn't just rely on discovery. He investigated. He also indicated that he showed defendant all of the video that he received. And defense counsel indicated that all of the video that he saw, well, that what the people presented in court was part of the video that he received in discovery. So there was more video than what was shown in court. And we know this from the testimony in the record that there was more video. But he also said that Mr. Tomczyk, the owner, would not have added anything in terms of the video. And that suggests that he would not have added more than what Angie said, which was that the video showed a finite portion of the outside and did not show all the way down the street where defendant alleged he would have shown. To address counsel's point about Angie, it's our position that the record is clear that defendant misspoke and there was no factual dispute. And we know this because when defense counsel said, your honor, he never told me about a witness named Angie. Defendant never said to the judge when he resumed discussion after defense counsel finished talking about the claims, defendant never said, yes, I did tell him about Angie. Defendant never said that. But what he said, he said I misspoke. He said when I said Angie, I meant to say Valerie. He said that immediately while counsel was still talking. He said I misspoke when I said Angie. I told him about Valerie. And then counsel subsequently said, yeah, he did tell me about Valerie. Exactly. So our position is that there was no witness named Angie. The defendant simply misspoke because Angie was the same name as the witness who testified for the people. Angie Lombardi was the cashier and defendant referred to her by name. So when he brought up, defense counsel argues that the court didn't explore the dispute about this witness named Angie. And our position is that there was no witness named Angie. Defendant merely misspoke. If there are no further questions from the court, then the people would ask that this court affirm the decision of the court below. Okay, Ms. Puente. Your honors, briefly, just as to the Jolly error about whether a public counsel was ineffective for failing to ask for a remand before a different judge. I just want to clarify that in Jolly, the state conceded that the state's participation was more than de minimis, that there was adversarial participation. So that really doesn't make Jolly less applicable to this case. As to the video, I also wanted to clarify that he did say it's on page 395. Joan said that the video would show him coming from Western. I might have said Armitage, but it's Western. And that would show that would impeach the victim's testimony that he ran up and caught up behind him and his dog and grabbed him by the neck at the front of the door. Also, as to the whether trial counsel investigated those videos. Sure, he talked to the store owner and he sent an investigator, but that was before he received discovery. As part of being an effective representative and a selfless advocate for your client, you need to review that discovery. And if he said that, from what I saw, it's not fair, but I talked to Tomzak, the store owner, who said that the outdoor cameras were working, he should have investigated more. And as to the claim about the third witness, I just asked the court to consider on page 397 of the record, when Mr. Jones is talking about the witness, he's like, what's wrong with my witnesses? What was wrong with Angie? Again, because of that, because he said that before even he mentioned Angie or Valerie and before the trial court started talking about whether he misspoke or not, or whether he had investigated Valerie, he mentioned an Angie way before that colloquy happened. So we asked this court for either, if you have no further questions, we would ask this court to find that the trial court did not comply with Jolly, pursuant to argument two, and that should be remanded, or also found that the trial judge on remand or appellate counsel is ineffective for failing to request that this case be remanded for an inquiry before a different judge. Thank you. Thank you. Excellent job to you both. We thank you for excellence and have a good day.